UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GAYLE KILLILEA DUNNE, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-cv-01075 (VLB) |
| v. | : | |
| | : | |
| SEAN DOYLE, DENISE CAMPION, JDDC | : | |
| CONSTRUCTION, INC., and LIGHTHOUSE | : | July 28, 2014 |
| MANAGEMENT, LLC d/b/a LIGHTHOUSE | : | |
| MANAGEMENT SERVICES, | : | |
|     Defendant. | : | |

MEMORANDUM OF DECISION GRANTING
DEFENDANTS' MOTION TO DISMISS [Dkt. #24]

I.      Introduction

The Plaintiff, Gayle Killilea Dunne, a resident of Greenwich, Connecticut,

brings this action against Sean Doyle ("Doyle"), Denise Campion ("Campion"),

JDDC Construction, Inc. ("JDDC"), and Lighthouse Management, LLC d/b/a

Lighthouse Management Services ("Lighthouse"), for monetary damages and

accounting and full disclosure of JDDC's books and records related to a

shareholders agreement executed by the Plaintiff and Defendants Doyle and

Campion.  Defendants JDDC, Doyle, and Campion, together the "JDDC

Defendants", have moved to dismiss the Complaint based on the pendency of

two prior duplicative adjudicative proceedings in New York.  The first proceeding

is a civil action pending in state court (the "NY Action") and the second is a

mandatory arbitration proceeding (the "Arbitration"). With respect to the later, the

Defendants rely on 9 U.S.C. § 3, also known as the Federal Arbitration Act ("FAA").[1]

For the following reasons, the JDDC Defendants' Motion to Dismiss is GRANTED.

II.     Background

This action arises out of an alleged breach of a shareholder agreement related to the ownership structure of JDDC, entered into by the Plaintiff and the JDDC Defendants.  [Dkt. #1, Complaint, ¶¶ 8-16].  However, prior to filing suit in the present matter, the parties had litigated the NY Action over the same dispute in the Supreme Court of New York, Westchester County, captioned *Sean Doyle v. Sean Dunne and Gayle Killilea Dunne, et al.*, (Index No.: 67688/122012).  [Dkt. #24-5, Defendants' Motion to Dismiss for Lack of Jurisdiction, Exhibit 3].

The NY Action was commenced on October 15, 2012 by the JDDC Defendants against the Plaintiff and her husband, Sean Dunne, seeking rescission of the alleged shareholder agreement at issue presently, and for injunctive and declaratory relief.  [*Id.* p. 13].  The Plaintiff and her husband filed an answer and counterclaims against the JDDC Defendants on October 19, 2012,

_____

[1] The FAA provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issues referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.

asserting breach of contract, fraudulent inducement, fraudulent misrepresentation, breach of fiduciary duty, fraud, and requested injunctive and accounting relief. [Dkt. #24-6, Exhibit 4, ¶¶ 20-59]. As a note, these counterclaims are the same as is in the present action pending before this Court with the exception of one added claim for a violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

On October 23, 2012, the Plaintiff in this action filed an Order to Show Cause in the NY Action seeking to compel arbitration in that proceeding on the basis of an arbitration clause contained in the shareholder agreement. [Dkt. #24-7, Exhibit 5]. The Order to Show Cause was resolved pursuant to a stipulation entered into between the parties dated December 14, 2012, which was subsequently entered as an order by the court on December 14, 2012. [Dkt. #24-8, Exhibit 6; Dkt. #24-9, Exhibit 7]. On December 17, 2012, the court ruled on then-pending cross motions for injunctive relief, one by the plaintiffs in that action for a temporary restraining order and preliminary injunction against the defendants Dunne and Killilea, and a preliminary injunction by the defendants against the plaintiffs requesting similar relief. [Dkt. #24-10, Exhibit 18]. The court granted the JDDC Defendants' request for a preliminary injunction, thereby enjoining Killilea and her husband from engaging in certain activities in connection with the operations of JDDC, and it denied Killilea and her husband's cross motion for a preliminary injunction, but ordered the JDDC Defendants to file an undertaking in the amount of $750,000. [*Id.*].

On December 28, 2012, the Plaintiff and the JDDC Defendants entered into an Agreement for Arbitrator Services with Andrew Schriever, Esq. [Dkt. #24-12, Exhibit 10].  Over the next few months, the parties to the Arbitration engaged in discovery and motion practice before the Arbitrator.  For example, Killilea, one of the respondents in the Arbitration, filed an application seeking a preliminary injunction for, among other things, preventing the disbursement of funds by JDDC in connection with the execution of development projects; the motion was nearly identical to the relief sought in the Supreme Court motion, which was made prior to commencing the Arbitration.  In response, the Arbitrator issued an interim award denying the motion for the preliminary injunction, but ordered the JDDC Defendants to maintain in their attorney's escrow account $4,901.75 and post an undertaking in the amount of $441.15, clearly much smaller than that ordered by the Supreme Court.  [Dkt. #24-13, Exhibit 11].  Further, the Arbitrator held several conferences and issued Interim Rulings on April 23, 2013 and May 2, 2013 concerning discovery and scheduling matters respectively.  [Dkt. #24-14, Exhibit 12; Dkt. #24-15, Exhibit 13].

On March 29, 2013, the Plaintiff's husband filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut, triggering the automatic stay pursuant to 11 U.S.C. § 362.  [Dkt. #27, Declaration of Killilea in Support of Plaintiff's Memorandum of law in Opposition to Defendants' Motions to Dismiss, ¶ 81].  After notice of the bankruptcy proceeding was provided to the Arbitrator, he requested briefing on the issue of whether the Arbitration could proceed or whether the claims against and by

4

Killilea needed to be severed from those against and by Dunne to avoid the automatic stay.  At that point, the JDDC Defendants argued that the stay was applicable to the entire Arbitration, but that they would file a motion with the bankruptcy court to lift the stay as to Killilea.  [Dkt. #27-3, Exhibit 3].  The respondent, on the other hand, continued to oppose the contention that the stay was applicable to both parties to the Arbitration and claimed that if the Arbitration was stayed, she would view the proceedings as abandoned, permitting her to proceed in a new forum of her choice.  [Dkt. #27-27-4, Exhibit 4].  On June 17, 2013, after receiving briefing from both parties and a notice from the bankruptcy trustee asserting that the financial investment in JDDC by the Plaintiff was secured with funds fraudulently conveyed to the Plaintiff by her husband, the Arbitrator issued an Interim Ruling staying the Arbitration on the basis of the bankruptcy stay.  [Dkt. #24-16, Exhibit 14].  In that ruling, the Arbitrator specifically stated that he

> does recognize Ms. Killilea's counsel's point that the solution of applying for the stay to be lifted had been discussed as a means to break the current impasse, that there were prior assurances that Claimants planned to bring that application but that Claimants have not taken any such action.  While the Arbitrator understands Ms. Killilea's concerns about the proceedings being delayed as a result, it is also true that the stay was triggered by Respondent Dunne's election to file for bankruptcy. This is of course his right, but this point is relevant insofar as Ms. Killilea contends that by their conduct Claimants have abandoned their right to arbitrate.  There is no dispute that the arbitration proceedings stopped moving forward by virtue of Mr. Dunne's election to file – not based on any action initially taken by Claimants.  While the Arbitrator is mindful of Ms. Killilea's frustration over Claimants' inaction in neglecting to apply to lift the stay,

the fact also remains that either Mr. Dunne or Ms. Killilea can also make this application to the Bankruptcy Court and it is therefore equally in their power to move that procedure along so as to minimize any further delay in disposing of the parties' claims.

Respondent Killilea's counsel has indicated that "if this matter is ruled to be stayed, Respondent's position will remain that the Claimants have abandoned the arbitration proceeding and that Ms. Killilea is free to proceed with her claims in another forum." June 10, 2013 letter from Mr. Nolin. On this record, the Arbitrator has not seen evidence of such abandonment, and Claimants' counsel has represented in a conference call that Claimants do in fact intend to proceed and he made clear at least his position that there has been no abandonment and no voluntary and knowing relinquishment of rights.

[Dkt. #24-166, Exhibit 14, pp. 4-5].

On June 28, 2013, the Plaintiff, through counsel, notified the Arbitrator and the JDDC Defendants that because the proceeding was stayed and the JDDC Defendants had failed to take any action to advance the Arbitration through the stay process, she considered the Arbitration terminated and abandoned. [Dkt. #27-8, Exhibit 8]. Though the Arbitration was stayed in June, on October 28, 2013, a conference was held between the JDDC Defendants and Killilea before the court in the NY Action, and the court stated that:

[a]t a conference held in this action on October 28, 2013, the Court was informed that Defendant Sean Dunne had filed a petition for bankruptcy and, thus, this action was stayed as to Sean Dunne. The Court was further advised that the dispute in this action is the subject of an arbitration and that the arbitrator has issued a decision staying the arbitration pending certain bankruptcy proceedings. After inquiring from counsel whether there would be any objection to the

6

> discontinuance of this action without prejudice and obtaining their consent, the Court sees no purpose to maintaining this action on its calendar.  Based on the foregoing it is hereby ORDERED that this action is discontinued without prejudice on the consent of counsel.

**[Dkt. #27-9, Exhibit 9].**

On July 29, 2013, while the New York Action was pending and three months before the NY Action was held in abeyance by consent of the parties pursuant to the automatic stay provisions of the United States Bankruptcy Code, 11 U.S. Code § 362 and the pending arbitration proceeding, the Plaintiff filed her Complaint with this Court.  The JDDC Defendants were served with the Complaint and filed appearances in this case on September 6, 2013, almost two months before the conference was held in the pending NY Action.  No party has explained why this proceeding was not mentioned in the October conference in the NY Action.  The JDDC Defendants filed the present motion to dismiss on October 15, 2013, some thirteen days before the October conference in the NY Action, arguing that this case should be dismissed due to the prior pending NY action or, in the alternative, that it should be stayed pending the outcome of the arbitration.

**III     Discussion**

Three different legal standards are potentially applicable in the present matter: stay pending arbitration, stay pending bankruptcy and abstention. Each will be discussed in turn.

### A. Stay Pending Arbitration

The FAA "is a congressional declaration of liberal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). It establishes "a federal policy favoring arbitration agreements," and "mandates the enforcement of contractual arbitration provisions." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir. 2007). It codifies a strong public policy against interfering with the rights of parties to enter into contracts and favoring consensual dispute resolution. *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir. 1997). "A court has a duty to stay its proceedings if it is satisfied that the issue before it is arbitrable . . . ." *Id.* (citations and internal quotation marks omitted). The FAA specifically provides that a federal court shall stay an action pending arbitration in any suit involving "any issue referable to arbitration" pursuant to a written arbitration agreement. 9 U.S.C. § 3. In determining whether this automatic stay applies, courts consider (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) whether Congress intended any federal statutory claims to be nonarbitrable; and (4) if only certain of the claims are arbitrable, whether to stay the balance of the proceedings pending the outcome of the arbitration. *Guyden v. Aetna Inc.*, 544 F.3d 376, 382 (2d Cir. 2008); *Velez v. Perrin Holden & Davenport Capital Corp.*, 769 F. Supp. 2d 445, 446 (S.D.N.Y. 2011). "[A]ny doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone*, 460 U.S. at 24-25. Even so, it is clear that "[t]here is . . . nothing irrevocable about an agreement to arbitrate." *Baker & Taylor, Inc. v. AlphaCraze.Com Corp.*, 602 F.3d 486, 491 (2d

Cir. 2010) (quoting 1 Larry E. Edmonson, Domke on Commercial Arbitration §
23:2, at 23-2 (3d ed. 2009)).

Before analyzing the specific factors, it is important to highlight that the
Plaintiff initially sought to compel arbitration in the NY Action, which, as
previously discussed, contains the same factual predicate and nearly all of the
same causes of action as the Complaint filed with this Court.  In response to that
order to compel arbitration, the JDDC Defendants agreed to arbitrate, stipulated
to such, and had the Supreme Court in the NY Action enter an order of
stipulation.  Then, the parties hired an arbitrator, drafted a contract for the arbitral
services, and proceeded to arbitrate the claims at issue in this case for nearly
seven months before the Arbitrator stayed the proceedings.  Therefore, as the
Arbitration was not dismissed, but merely stayed, there is still a pending
Arbitration in this matter.  This fact alone is enough under the FAA for this Court
to stay this proceeding while that Arbitration continues.

Ignoring the procedural posture of this case, the factors to compel
arbitration and stay the proceeding are met.  First, it is clear that the parties
agreed to arbitrate, as both previously acknowledged so in the NY Action.  The
arbitration clause in the shareholder agreement states that "[a]ny disputes
between parties [are] to be referred to mediation and failing settlement to
arbitration."  [Dkt. #1-1, Shareholder Agreement, ¶ 23].  The scope of the
agreement also covers all claims here because the causes of action are nearly
identical to those in the NY Action, and the parties agreed in the NY Action to

**9**

arbitrate all of the claims.  Since the parties previously agreed that the scope of their agreement covered all disputes at issue in this case, the Court sees no reason to revisit this question.  Third, there are no federal claims at issue in this case.  Finally, the Plaintiff does not argue that some of the claims present in this matter are not subject to arbitration.  Even if she were to argue that the CUTPA claim filed here was not subject to arbitration, she has provided no authority for such an argument.  A CUTPA claim can be submitted to arbitration and has been ruled enforceable by New York courts.  *See Sawtelle v. Waddell & Reed, Inc.*, 6 Misc. 3d 487, 489 (N.Y. Sup. Ct. 2004) (upholding an arbitral award of punitive damages under CUTPA).

More generally, "[u]nder its inherent power to manage its docket, a district court can stay a case pending arbitration when the arbitration may determine issues involved in the case, even when the parties to the stayed action are not the parties involved in the arbitration."  *Donjon Marino Co., Inc. v. Water Quality Ins. Syndicate*, 523 F. App'x 738, 740 (2d Cir. 2013) (citing *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964)).  In *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, the court used its discretionary authority to stay a proceeding pending the outcome of an ongoing arbitration since the outcome of the arbitration would have a significant bearing on the case,  and the parties and the issues being arbitrated were different from those in the litigation.  *See Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, No. 10-civ-8134(DLC), 2011 WL 1465744, at *5 (S.D.N.Y. April 15, 2011).  Here, the Plaintiff has sought adjudication in an arbitral forum, but now tries to evade

that decision by filing the present action against the same parties, largely alleging the same causes of action, and seeking the same relief.  It is clear that the Arbitrator's ruling on these issues will dramatically affect the outcome of the present litigation.  This Court would be inclined, even assuming the other facts did not weigh heavily for a stay, to use its discretionary docket-managing authority and order that this action be stayed until the Arbitration is no longer pending.

In response to the Defendants' motion to stay pending arbitration, the Plaintiff only argues that the Arbitration proceeding was abandoned by the Defendants because they refused or failed to seek a release from the automatic stay from the bankruptcy court, which is currently adjudicating the Plaintiff's husband's voluntary petition for Chapter 7 discharge.  [Dkt. #26, Plaintiff's Memorandum of Law in Opposition to JDDC Defendants' Motion to Dismiss, p. 7-10].  First, while it is true, as the Plaintiff's authorities make clear, that "there is nothing irrevocable about an agreement to arbitrate," and "[b]oth of the parties may abandon this method of settling their differences, and under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration," none of the authorities stand for the proposition that a party may abandon an arbitration after the arbitration proceedings have already commenced.  *In re Am. Exp. Financial Advisors Sec. Litig.*, 672 F.3d 113, 132 (2d Cir. 2011) (quoting *Baker & Taylor, Inc. v. AlphaCraze.com Corp*, 602 F.3d 486, 490 (2d Cir. 2010)).  Instead, these authorities stand for the proposition that arbitration may be abandoned by the parties' prior to commencing or compelling it.  It is

11

understandable, as arbitration is a creature of contract, that both parties in agreement or through mutual or independent abandonment may waive their right to arbitrate and commence suit in court.  That is very different, however, from one party compelling arbitration, frustrating its advancement, and then selecting a new forum.

Furthermore, even if an arbitration once begun could be abandoned, the Arbitrator in this case specifically found that he "has not seen evidence of such abandonment," and that the JDDC Defendants have made clear that they "intend to proceed and . . . that there has been no abandonment and no voluntary and knowing relinquishment of rights."  [Dkt. #24-16, Exhibit 14, p. 5].  The Arbitrator also highlighted that he was put into the situation of having to determine if the automatic stay of the bankruptcy proceeding affected the arbitration because of the Plaintiff's husband's voluntary decision to file for bankruptcy.  [*Id.*].  Importantly, he also stated that either the JDDC Defendants or the Plaintiff had the capability to seek release from the bankruptcy court to proceed with the Arbitration.  Therefore, for the Plaintiff to argue that the JDDC Defendants have abandoned the Arbitration thus permitting her to refile in a new forum is disingenuous because she also had the power to unstay the proceeding.

It is unclear to this Court why neither party has yet to seek relief from the bankruptcy stay, but that mutual failure in and of itself does not constitute an abandonment of the proceeding.  There are myriad conceivable reasons why it would be improvident legally or strategically to seek relief at a particular juncture.

Absent any information about the bankruptcy, the failure to seek relief from stay cannot be categorized.  On the other hand, there exists a plausible rational for the Plaintiff's failure to do so.  It would not be illogical to conclude that the Plaintiff, the party that initially sought arbitration in the first instance,  displeased with the denial of her application for a preliminary injunction, chose not to seek relief from stay, declare the arbitration abandoned, and then initiate litigation in a third forum in hopes of a more favorable outcome.  Therefore, even if the Court viewed the abstention doctrine discussed *infra* as inapplicable, the Court would stay the proceeding pending the outcome of the still pending Arbitration.

### B.  Stay Pending Bankruptcy

Even though neither side has briefed this issue, this Court questions whether the automatic stay that the Arbitrator found precluded him from proceeding would also affect this Court's ability to adjudicate the Complaint now. The procedural history of this dispute suggests that it would.  As cited above, Section 362(a) of the Bankruptcy Code provides for an automatic stay to, among other things, the "continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of" the bankruptcy proceeding, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  11 U.S.C. § 362(a).  "[C]ourts have interpreted Bankruptcy Code § 362(a) broadly to hold that an 'action that will

**13**

in any way impinge on the ability of a debtor to utilize its property or operate its business' constitutes a violation of the automatic stay." *In re Heating Oil Partners*, No. 3:08-CV-1976(CSH), 2009 WL 5110838, at *8 (D. Conn. Dec. 17, 2009), *aff'd sub nom.*, 422 F. App'x 15 (2d Cir. 2011).  The automatic stay is one of the most fundamental debtor protections provided by the bankruptcy code, and it serves to promote two principal purposes: (1) "it provides the debtor with a 'breathing spell' from its creditors and (2) it "allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.'" *Id.* (quoting *In re Lonosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990)).  Essentially, therefore, it "protects the debtor from the harassment of lawsuits in other jurisdictions as it reinforces the exclusive jurisdiction of the bankruptcy court." *Id.* (citing *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1167 (2d Cir. 1979); *Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998)).

In this case, the Trustee notified the JDDC Defendants that "any monies provided [to you] by [Killilea or her husband] are either (i) property of the bankruptcy estate of the Debtor or (ii) are subsequent transfers of property fraudulently transferred by the Debtor." [Dkt. #24-17, Exhibit 15].  Accordingly, the Trustee instructed the JDDC Defendants to give to the Trustee directly any monies awarded to Killilea and her husband as related to the proceeding.  "As property of the estate, the Trustee has discretion whether to bring the cause of action and, if not statutorily limited to a specific jurisdiction, to whose forum to

**14**

bring it in." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106, 114-15 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012).  Here, if the Trustee is correct that the proceeds sought by the Plaintiff are part of the bankruptcy estate, it is the Trustee that is responsible for collecting the assets by stepping into the shoes of the bankruptcy petitioner and litigating on behalf of the bankruptcy estate.  It appears, therefore, that the automatic bankruptcy stay would also apply and preclude this Court's adjudication of this case.  However the Court need not reach this unbriefed issue because it disposes of the matter on abstention grounds.

### C.  *Colorado River* Abstention

A federal court may, in certain exceptional circumstances, abstain from exercising jurisdiction over a claim properly brought before it, but the abstention doctrine "comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction . . . ."  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)).  One narrow exception to the general obligation to exercise jurisdiction is when a parallel state court action is pending.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  In *Colorado River*, the Supreme Court held that a "federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation.'"  *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (quoting

*Colorado River*, 424 U.S. at 817-18).  When determining whether to abstain from exercising jurisdiction, courts are required to consider the following factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohwak Power Corp.*, 673F.3d at 101 (quoting *Woodford*, 239 F.3d at 522).  However, a court's decision to decline jurisdiction "does not rest on a mechanical checklist," but rather depends on "a careful balancing of the important factors as they apply in a given case."  *Moses H. Cone*, 460 U.S. at 16.  Therefore, in addition to the six criteria above, courts consider a wide variety of factors when conducting the abstention analysis.

Before analyzing the specific factors, "a court must make a threshold determination that the federal and state court cases are 'parallel.'"  *Dalzell Mgmt. Co., Inc. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 597 (S.D.N.Y. 2013) (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  "Federal and state proceedings are 'parallel' for abstention purposes when the two proceedings 'are essentially the same,' meaning that 'there is an identity of parties, and the issues and relief sought are the same.'"  *Id.* (quoting *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012)).  The Plaintiff argues that there are no parallel proceedings because the causes of action in the NY Action and the current action

16

are different.[2]   However, to be parallel the proceedings need not be identical. "Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issue' in both forums." *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012), *reconsideration denied*, 10-cv-696(KAM)(SMG), 2012 WL 6617361 (E.D.N.Y. Dec. 19, 2012) (quoting *Dittmer*, 146 F.3d at 118).   Therefore, "[c]omplete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." *GBA Contracting Corp. v. Fid. & Deposit Co.*, No. 00-cv-1333(SHS), 2001 WL 11060, at *1 (S.D.N.Y. Jan. 3, 2001).   As discussed above, the requested relief and factual predicate underlying both proceedings are nearly identical.   Therefore, there is a sufficient identity of parties and issues to render these proceedings parallel.   The Court further notes that while Sean Dunne is not named as a party to this action, the trustee of his bankruptcy estate, having claimed an interest in the funds at issue in the NY Action and, accordingly then,

---

[2] The Plaintiff also argues that the parties are different as she has also named Lighthouse as a Defendant in this matter, and Lighthouse is not a party to the NY Action.  However, the Court has determined that it lacks personal jurisdiction over this Defendant, and, accordingly, granted the Defendant's motion to dismiss [*See* Dkt. #68].  Therefore, Lighthouse is not a party to this action and this argument is moot.  Even if the Court had jurisdiction over the party, as the authorities cited above make clear, complete identity of parties is not required for abstention.  The factors still weigh in favor of abstention even though Lighthouse is not a party to the NY Action.  There is no reason why Lighthouse, an entity doing business in New York, could not have been named a party initially by the Plaintiff in the NY Action, and its absence does not sufficiently render the NY Action not parallel to this proceeding.

in this case and any eventual recovery to which the Plaintiff may be entitled, renders the parties in both actions substantially if not effectively identical.

The Plaintiff's sole remaining argument that the proceedings are not parallel is due to her inclusion of a claim for a CUTPA violation, which was not originally alleged in the NY Action. "However, the unavailability in state court of a particular remedy does not automatically destroy the parallel nature of the state and federal proceedings for abstention purposes." *Manna v. Greenburg No. 11 School Dist.*, 2 F. Supp. 2d 461, 484 (S.D.N.Y. 1998). In *Manna*, the court found that even though a cause of action for compensatory damages was added to the federal court proceeding, as that relief was unavailable in the state court, the proceedings were still sufficiently parallel to trigger the abstention doctrine analysis. *Id.* Similarly here, it cannot be the case that merely adding a state law cause of action seeking monetary damages would be sufficient to destroy the parallel nature of the proceedings when several of the other causes of action in both proceedings seek the same relief, i.e. monetary damages, and the actions are based on an identical factual predicate. The standard is that the proceedings be "substantially" similar, not identical; obviously, this prevents a plaintiff from evading abstention by adding a duplicative, but independent cause of action to attempt to destroy the parallel nature of the proceedings. Therefore, this Court holds that adding a single cause of action seeking compensatory damages is not sufficient to destroy the undeniable parallel nature of the proceedings in this case.

Furthermore, the Plaintiff had two options when filing her counterclaims in the NY Action to incorporate this claim.  First, as stated above, she could have filed her CUTPA claim in the NY Action since New York courts routinely adjudicate CUTPA claims.  *See, e.g., Aetna Life Ins. Co. v. Appalachian Asset Mgmt. Corp.*, 970 N.Y.S.2d 750 (N.Y. App. Div. 2013 ) (reviewing CUTPA claims); *Phoenix Capital Invs. KKC v. Ellington Mgmt. Grp., L.L.C.*, 859 N.Y.S.2d 46 (N.Y. App. Div. 2008) (reviewing CUTPA claims); *Liberty Surplus Ins. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 872 N.Y.S.2d 691 (N.Y. Sup. Ct. 2008) (adjudicating CUTPA claims).  Second, New York has a nearly identical consumer protection statute, which states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349(a) (McKinney). This statute specifically grants to "any person who has been injured by reasons of any violation of this section" the right to "bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section." *Id.*  Considering that CUTPA provides nearly identical protections, the Plaintiff could have used this New York statute to request the same relief she now adds to her Complaint in this Court.  Therefore, merely adding a CUTPA claim is insufficient to render the proceedings unparallel when the claim could have been brought originally and

**19**

when other state statutes provide nearly identical relief.  Finally, Plaintiff does not allege that she was unable to amend the complaint in the NY Action to assert an unfair business practices claim.  Accordingly, the Plaintiff has failed to establish that the NY Action and this case brought by substantially the same parties seeking redress for the same harm arising out of the same contract are not parallel proceedings.

The second argument made by the Plaintiff is that there is no pending or current proceeding in state court, thereby rendering the abstention doctrine moot.  It is true that several courts have held when the parallel action in state court is dismissed, the abstention doctrine is inapplicable.  *See Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 289 (E.D.N.Y. 2013), *motion to certify appeal granted*, 11-cv-3862(ADS)(ARL), 2013 WL 2154759 (E.D.N.Y. May 16, 2013).  In *Allstate Ins. Co.*, the court found that there was no parallel proceeding when the state court action was dismissed according to New York state law that permits state actions to be dismissed when the same action was filed in federal court.  *Id.* at 284, 288-89.  *See also Fisher v. O'Brien*, No. 09-cv-42(CBA)(LB), 2010 WL 1269793, at *1 (E.D.N.Y. March 9, 2010) (finding no parallel proceedings when the state court action was settled by the parties); *Doyle v. N.Y. State Div. of Housing and Cmty. Renewal*, No. 98-civ-2161(JGK), 1999 WL 177441, at *3 (S.D.N.Y. March 30, 1999) (finding no parallel proceeding when the parallel proceeding, an administrative hearing, was disposed of and the parties did not file a new application within the period permitted to refile and did not commence an action in New York state court).

**20**

The parallel action in this matter, however, has a much different procedural disposition than the authorities cited by the Plaintiff.  The judge in the NY Action stated that "[a]fter inquiring from counsel whether there would be any objection to the *discontinuance* of this action *without prejudice* and obtaining their consent, the Court sees *no purpose to maintaining this action on its calendar.*" [Dkt. #27-9, Exhibit 9 (emphasis added)].  This case, unlike the other authorities cited, was neither dismissed nor resolved; instead it was discontinued in deference to the automatic bankruptcy stay and the pendency of the mandatory Arbitration.  The clear import of the judge's statement was that he was discontinuing the case solely for the purpose of docket management, clearing from the docket of active cases ripe for adjudication a case that the court could not adjudicate until the automatic bankruptcy stay was lifted and the Arbitration concluded.

The fact that the case was not dismissed is pivotal.  Because the case is merely dormant, subject to revival upon relief from or the cessation of the stay and termination of the Arbitration, it remains pending.  In *Andy Stroud, Inc. v. Brown*, the court found that the prior pending action doctrine was applicable to a federal court suit filed in California even when that suit was dismissed without prejudice with leave to amend to include additional jurisdictional facts.  *Andy Stroud, Inc. v. Brown*, No. 08-civ-8246(HB), 2009 WL 539863, at n.4 (S.D.N.Y. March 4, 2009).  That court held that since the action was denied without prejudice, and the docket was kept open pending the filing of an amended complaint, it was "pending" for purposes of the abstention analysis.  *Id.*  Similarly

21

here, the NY Action was not dismissed in the sense that it reached some definite resolution, it was discontinued without prejudice for the parties to avail themselves of the forum when the Arbitration was finished and the bankruptcy stay lifted.  This is more akin to the procedural posture in *Andy Stroud, Inc.* than an outright dismissal based on some substantive reason.  Accordingly, this Court views the NY Action, which was administratively closed rather than dismissed, as being concurrent and parallel to the present proceeding.  It is thus appropriate for this Court to engage in the *Colorado River* abstention analysis.

   i.  **Assumption by Other Court of Jurisdiction over Res or Property**

   The first factor weighs in favor of abstention.  The judge in the NY Action, as well as the Arbitrator, have already exercised jurisdiction over the res in this matter by delineating the parties' rights to operate and control JDDC, the rights to dispose of certain trust funds collected and disbursed in connection with the underlying New York construction project, as well as the disposition of the cash collateral that the Plaintiff seeks to recover in this case.  On November 19, 2012, the parties stipulated and agreed to proceed by arbitration, and as part of that stipulation, they agreed that "nothing herein shall alter or affect the Temporary Restraining Order issued by the Court on October 22, 2012 until any further order of the Court [sic]."  [Dkt. #24-8, Exhibit, 6].  Further, the court granted in part and denied in part the parties' cross motions for preliminary injunctions.  In that December 17, 2012 order, the Supreme Court specified and delineated several obligations of each party with respect to operating JDDC and with respect to the

possession of capital sufficient for an award amount.  [Dkt. #24-10, Exhibit 8].  As far as this Court can discern, and neither party has stated otherwise, these injunctions and orders are still in effect.  In *Moos v. Wells*, the court weighed heavily this factor in the abstention analysis when that the parallel state court proceeding issued an injunction prohibiting the sale of lofts to non-tenants in an eviction action.  *Moos v. Wells*, 585 F. Supp. 1348, 1350 (S.D.N.Y. 1984).  Since the injunction in that case was still in effect, the court found that the state court had "assumed jurisdiction over the res."  *Id.*  Similarly here, the Supreme Court assumed jurisdiction over the res by issuing orders, including the TRO and preliminary injunction, thus causing this factor to weigh in favor of abstention.

### ii.  Inconvenience of the Federal Forum

The Defendants argue that this federal forum is inconvenient because their business is located in New York and all employees with knowledge of the events related to this litigation reside in New York.  In *Estee Lauder Cos, Inc. v. Batra*, the Court deemed this factor largely neutral when a parallel proceeding existed in California because "Batra spent his entire tenure with Estee Lauder working in California.  As such, much of the evidence relating to his employment and the transfer or not of trade secrets is likely located in California.  However, by the same token, Estee Lauder's headquarters and principal place of business are located in New York.  Batra reported to high level management in New York and was responsible for two brands with significant functions based out of New York. As such, many of the witnesses are also located in New York . . . ."  *Estee Lauder*

*Cos. Inc. v. Batra*, 430 F. Supp. 2d 158, 167 (S.D.N.Y. 2006).  Unlike in that case where the defendant had connections to both fora, the only connection to Connecticut here is the fact that the Plaintiff resides just over the New York state border with Connecticut in Greenwich.  The contract at issue was executed and performed in West Chester County, New York, and the Defendants' businesses, records and witnesses are all located in West Chester County, New York.  Furthermore, the Plaintiff resides in Greenwich, which is closer to West Chester, New York, than to Hartford, Connecticut.  Accordingly, this factor weighs marginally in favor of abstention.

### iii.   Avoidance of Piecemeal Litigation

As in many *Colorado River* abstention cases, one of the most important factors is the desirability of avoiding piecemeal litigation.  *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205, 210-211 (2d Cir. 1985) (noting "[a]s in *Colorado River*, the danger of piecemeal litigation is the paramount consideration.").  As the Second Circuit noted, "[t]he existence of such concurrent proceedings creates the serious potential for spawning an unseemly race to see which forum can resolve the same issues first . . . ."  *Id.* at 211.  "The spectre of piecemeal litigation implicates both, combining the impracticality of wasting judicial resources with the legal dilemmas posed by the possibility of inconsistent results in two identical or virtually identical cases."  *Gen. Star Intern. Indem. Ltd. v. Chase Manhattan Bank*, No. 01-civ-11379(AGS), 2002 WL 850012, at *7 (S.D.N.Y. May 3, 2002).  In *AMNEX, Inc. v. Rowland*, the court found that

because the pivotal issue in both the state proceedings and the federal proceeding was identical, the factor weighed in favor of abstention even though the federal proceeding had additional parties.  *AMNEX, Inc. v. Rowland*, 25 F. Supp. 2d 238, 246 (S.D.N.Y. 1998); *see also Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652, 656 (S.D.N.Y. 1997) (finding that the factor weighed in favor of abstention because the actions "would require piecemeal and duplicative litigation of the" central issues being litigated); *United States v. Blake*, 942 F. Supp. 2d 285, 298-99 (E.D.N.Y. 2013) (finding that the factor weighed in favor of abstention when even if the federal claims were adjudicated, issues would remain in the state litigation).

Here, there is no doubt that this factor weighs in favor of abstention.  The causes of action in the dormant yet pending NY Action and those pending before this Court are identical except for the additional CUTPA claim.  Moreover, the Plaintiff has again filed with this Court her request for a preliminary injunction. Upon reviewing that motion, it appears that she requests the same relief that has already been denied in both the NY Action and the Arbitration.  This Court, therefore, is being asked to review and redecide the motion, which obviously results in duplicative litigation, wastes scarce judicial resources, and, most dangerously, may result in conflicting outcomes.  This type of piecemeal litigation is that which the *Colorado River* abstention doctrine is principally meant to avoid.  Accordingly, since the issues that would be resolved are identical as those currently pending in the NY Action and in the Arbitration, and because the fear of duplicative and inconsistent results is not just theoretical in light of the

Plaintiff's third attempt to receive injunctive relief, this Court finds that this factor weighs heavily against exercising jurisdiction.

### iv.  Order in Which Jurisdiction was Obtained and Progress

"The fourth *Colorado River* factor looks at the point in time at which the respective actions were filed, however, a court must engage in more than a simple comparison of dates."  *L. Harbert, Inc. v. Aetna Cas. & Sur. Co.*, No. 96-civ-8924(LAP), 1997 WL 539778, at *4 (S.D.N.Y. Aug. 28, 1997) (citing *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989) ("[T]he inquiry is not so simplistic; the relative progress of the federal and state proceedings must be carefully examined.")).  Therefore, courts "look not only to which action was commenced first, but rather to the relative progress of actions in the two forums."  *Estee Lauder Cos. Inc.*, 430 F. Supp. 2d at 168 (quoting *Am. Alliance Ins. Co.*, 961 F. Supp. at 659).  In *L. Harbert, Inc.*, the court found this factor weighed in favor of abstention when the federal complaint was filed "seven months after the State Action" and "no progress ha[d] taken place in the Federal Action," meaning that the "Defendant [had] not answered the complaint, filing the separate motion [to dismiss] instead, and "[i]n the State Action, . . . defendants have answered, . . . filed a third party complaint, and . . . made a request for discovery."  *L. Harbert, Inc.*, 1997 WL 539778, at *4.  Similarly here, the Complaint with this Court was filed more than nine months after the NY Action was commenced, and the JDDC Defendants have not answered the Complaint, instead they filed this motion to dismiss.  Moreover, the JDDC Defendants have filed a separate protective order

preventing discovery until the motion is decided.  Conversely, in the NY Action, the Plaintiff responded to the complaint and asserted counterclaims, thus availing herself of that jurisdiction.  It is also apparent that the proceeding has progressed as the Supreme Court has issued at least two preliminary orders: a TRO and a preliminary injunction.  Moreover, discovery in the Arbitration progressed to the point where the Arbitrator requested dates to conduct the hearing.  Clearly, these proceedings have progressed to the point where abstention is warranted.  This factor, therefore, weighs in favor of abstention.

### v.  Whether State or Federal Law Supplies Rule of Decision

The fifth factor also does not support the exercise of jurisdiction over this case as the federal complaint is based solely on diversity jurisdiction and the substantive law to be applied is state law.  Even where the state law is well-settled, courts have stated that "a decision to abstain may be supported by the fact that 'the bulk of the litigation would necessarily revolve around the state-law . . . rights of . . . parties.'"  *L. Harbert, Inc.*, 1997 WL 539778, at *4 (quoting *General Reins. Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 82 (quoting *Moses H. Cone*, 460 U.S. at 23 n. 29)).

### vi.  Adequate Protection of the Rights of the Parties

The sixth factor is largely neutral.  There are no complicated state law issues that are presented, and both the New York Supreme Court and this Court are more than capable of protecting the rights of the parties.  *See In re Asbestos*

*Litig.*, 963 F. Supp. 247, 253 (S.D.N.Y. 1997).  It is worth noting, however, that the Second Circuit even found that this factor weighed in favor of abstention when a magistrate judge in the parallel state court proceeding recommended staying the state court action pending the outcome of other litigation.  *See General Reins. Corp.*, 853 F.2d at 82.  Therefore, even though the NY Action has been discontinued without prejudice to recommencing after the arbitration is resolved, the parties' rights are adequately protected in both fora.

### vii.   Other Factors

As discussed above, courts in this circuit take into account other factors that may weigh in favor of or against abstention when conducting the *Colorado River* analysis.  One such factor that cannot be ignored in this case is the clear forum shopping that the Plaintiff has engaged in since the NY Action was filed. The Ninth Circuit specifically requires consideration of this factor when conducting the *Colorado River* abstention analysis, and courts in this circuit have cited the principle of forum shopping as one concern that affected their balance. *See Holder v. Holder*, 305 F.3d 854, 870-71 (9th Cir. 2002) (considering as a factor in the abstention analysis whether exercising jurisdiction would promote forum shopping); *L. Harbert, Inc.*, 1997 WL 539778, at *4 ("The strong policy against allowing a plaintiff to manipulate our system of parallel courts by filing in federal court once he or she has already filed in state court also favors abstention.  In this case, Harbert's filing of a complaint in federal court appears to be a thinly veiled attempt to remove its case to federal court, in violation of the well-

established policy against such forum-shopping tactics."); *DLJ Mortg. Capital, Inc. v. Kontogiannis*, No. 10-civ-9092(LTS), 2011 WL 611836, at *3 (S.D.N.Y. Feb. 17, 2011) ("The interests of efficiency and judicial economy would clearly be served, and forum-shopping (however indirect) discouraged, by remand of this action to state court for prompt continuation of the previously-pending proceedings."); *Lorentzen v. Levolor Corp.*, 754 F. Supp. 987, 993 (S.D.N.Y. 1990) ("Of greatest significance in our review of factor 4—and most influential to our decision to abstain—is the fact that it was plaintiff who chose to trigger the jurisdiction of the state court in this matter . . . . [Filing in federal court] appears to be an attempt by plaintiff to change his original choice of forum in violation of the federal policy against plaintiff removal and forum-shopping.").

There can be no debate that exercising jurisdiction in this case would encourage the type of forum shopping federal courts generally prohibit.  First, the JDDC Defendants filed suit in New York state court, only to have that action interrupted by the Plaintiff's order to show cause as to why the case should not proceed to arbitration.  The parties agreed to arbitrate the dispute, and the Supreme Court ordered the stipulation and compelled the parties to proceed in that forum.  Then, after a negative ruling on a motion for a preliminary injunction, the Plaintiff's husband filed for voluntary bankruptcy protection, thereby preventing the Arbitration form proceeding.  When the JDDC Defendants refused or failed to seek leave from the bankruptcy court to proceed with the Arbitration, the Plaintiff declared that the Arbitration had been abandoned, thereby permitting her to file the identical action in a third forum.  The Plaintiff then filed the

**29**

Complaint with this Court and filed the same motion for a preliminary injunction that has already been denied twice in two different fora.  Interestingly yet confusingly, neither party raised the existence of the present action to the court in the NY Action at the October conference, which resulted in a discontinuance of the NY Action.  Instead, the parties agreed to administratively close that action even though the Plaintiff had already filed her Complaint here and the Defendants' counsel already appeared.  While it appears that both parties are complicit in these procedural games, the Court cannot condone or encourage forum shopping.  As the Supreme Court noted in the abstention context, "a party may not procure federal intervention by terminating the state judicial process prematurely—foregoing the state appeal to attack the trial court's judgment in federal court."  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989).  Here, the Plaintiff arbitrarily terminated the Arbitration and discontinued the NY Action in hopes of restarting her case here.

Another factor that is considered in the abstention context is whether "the vexatious or reactive nature of either the federal or the state litigation may influence the decision to defer to a parallel state litigation."  *Moses H. Cone*, 460 U.S. at 17 n.20.  In *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, the Second Circuit concluded that abstention was appropriate where the same party was the plaintiff in both the state and federal actions, and the plaintiff filed the federal action after suffering some failures in the parallel state action.  *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985).  Here, the Plaintiff availed herself of the New York forum by filing counterclaims against the JDDC

Defendants.  Then, after receiving negative rulings on her interim relief motions in both the Arbitration, which she compelled, and the NY Action, she filed the present action here.  This behavior bears the indicia of reactive litigation, which weighs in favor of abstention in this Circuit.

Balancing these factors, it is clear that the first, third, fourth, and fifth factors weigh heavily in favor of abstention and none of the factors weigh against it.  On this balance and taking into consideration the extra considerations discussed above, this case presents one of the rare exceptions to the general rule requiring federal courts to exercise jurisdiction.  *See DLJ Mortg. Capital, Inc.*, 2011 WL 611836, at *3 (abstaining from exercising jurisdiction when four out of the six factors weighed in favor abstention and no factors weight against it).

**III.      Conclusion**

For the foregoing reasons, Defendants' [Dkt. #24] Motion to Dismiss is GRANTED.  The Court abstains from exercising jurisdiction over this matter, and dismisses the action.  Moreover, even if the Court were to exercise jurisdiction, this action would be stayed pending the outcome of the Arbitration and additional briefing would be required on whether the automatic bankruptcy stay would also prevent this case from proceeding.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 28, 2014

**32**